# 16-611-cv

## United States Court of Appeals for the Second Circuit

ALLYSON SMITH,

*Plaintiff-Appellant,*

v.

WELLS FARGO BANK, N.A.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
Case No. 15-cv-89 – U.S. District Judge Stefan R. Underhill

**APPELLANT'S REPLY BRIEF**

Randall S. Newman
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
270 Madison Avenue
New York, NY 10016
(212) 545-4600
newman@whafh.com

*Counsel for Allyson Smith*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

ARGUMENT .....................................................................................................1

I.     WELLS FARGO'S ARGUMENT THAT SMITH WAS GIVEN "CLEAR AND CONSPICUOUS" NOTICE OF THE DATE HER RESCISSION PERIOD EXPIRED IS BASED ON AN ERRONEOUS ASSUMPTION OF WHEN THE LOAN WAS "CONSUMMATED" ..........1

    A.     Connecticut Law Determines When the Wells Fargo Loan was "Consummated" ..........................................1

    B.     Under Connecticut Law, the Loan Was Not Consummated Before Both Smith and Wells Fargo Were Obligated to Proceed ....................2

    C.     *Murphy v. Empire of America* Does Not Apply Here ..........................3

    D.     The Loan Was Not Consummated When Smith Signed It ...................5

CONCLUSION ..................................................................................................9

# TABLE OF AUTHORITIES

**CASES**                                                        **Page(s)**

*Bank of New York v. Conway*,
  916 A.2d 130 (Conn. Super. Ct. 2006) .................................................................5

*Bartomeli v. Bartomeli*,
  783 A.2d 1050 (Conn. App. Ct. 2001).........................................................2, 4, 6

*Jackson v. Grant*,
  890 F.2d 118 (9th Cir. 1989) ................................................................................4

*Murphy v. Empire of America, FSA*,
  746 F.2d 931 (2d Cir. 1984)........................................................................3, 4, 5, 6

## **STATUTES & RULES**

Truth-in-Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA") ......................................8

12 U.S.C. § 2603 ...........................................................................................................6

Conn. Gen. Stat. § 52-550...........................................................................................2, 3

New York General Obligations Law § 5-701, *et seq.*................................................3

Regulation Z, 12 C.F.R. § 1026, *et seq*..................................................................1, 2

Plaintiff-Appellant, Allyson Smith ("Smith"), by her attorneys Wolf Haldenstein Adler Freeman & Herz LLP, respectfully submits this Reply Brief in response to the brief submitted by the Defendant-Appellee, Wells Fargo Bank, N.A. ("Wells Fargo") in further support of her appeal.

## ARGUMENT

### I. WELLS FARGO'S ARGUMENT THAT SMITH WAS GIVEN "CLEAR AND CONSPICUOUS" NOTICE OF THE DATE HER RESCISSION PERIOD EXPIRED IS BASED ON AN ERRONEOUS ASSUMPTION OF WHEN THE LOAN WAS "CONSUMMATED"

As Smith made clear in her opening brief, the dispute between the parties and the reversible error committed by the District Court in dismissing Smith's SAC[1] concerns when the loan from Wells Fargo Bank (the "Wells Fargo Loan") was "consummated." In its brief, Wells Fargo incorrectly argues that "the loan agreement was 'consummated' on or before March 26, [2012]" and that the "District Court correctly held that Smith accepted Wells Fargo's offer on March 13, 2012, when she signed the loan papers and agreed to be bound by them." App. Br. at 8.

#### A. Connecticut Law Determines When the Wells Fargo Loan was "Consummated"

The Parties agree that under Regulation Z, the term "consummation" means "the time that a consumer ***becomes contractually obligated on a credit***

---

[1] Defined terms have the same definition as in the Appellant's Opening Brief.

*transaction*." 12 C.F.R. § 1026.2(a)(13) (emphasis added). The Parties also agree that under the Official Staff Interpretations of Regulation Z, Connecticut law governs when a binding contractual obligation was created. However, Wells Fargo improperly relies upon New York law, not Connecticut law, to support its argument regarding when the loan was "consummated." According to Wells Fargo, although the District Court also applied New York law, "Connecticut law is no different." App. Br. at 8. Wells Fargo is wrong.

### B. Under Connecticut Law, the Loan Was Not Consummated Before Both Smith and Wells Fargo Were Obligated to Proceed

The parties do not dispute that under Connecticut law, "[t]o form a contract, generally there must be a bargain in which there is a manifestation of *mutual assent* to the exchange between two or more parties. . . . [The] agreement . . . requires a clear and definite promise." *Bartomeli v. Bartomeli*, 783 A.2d 1050, 1055 (Conn. App. Ct. 2001) (emphasis added; citations and internal quotation marks omitted).

For any contract of more than $50,000, Connecticut law also *requires a writing* signed by the party against whom the agreement is to be enforced. Conn. Gen. Stat. § 52-550 states as follows:

> No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is *made in writing and signed by the party, or the agent of the party, to be charged*…(6)

upon any agreement for a loan in an amount which exceeds fifty thousand dollars.

Conn. Gen. Stat. § 52-550(a)(6) (emphasis added).

In this important respect, Connecticut law is fundamentally different from New York law, which has no absolute requirement of a signed writing for any loan transaction. The New York statute of frauds, New York General Obligations Law § 5-701, *et seq.*, does not contain any provision that a promise to make a loan in any amount must be in writing.[2]

There is no writing signed by Wells Fargo or an agent of Wells Fargo to lend Smith money, which indisputably exceeded fifty thousand dollars in this case. Thus, under applicable Connecticut law, there was no enforceable contract against Wells Fargo when Smith signed the Mortgage and Note.

### C. *Murphy v. Empire of America* Does Not Apply Here

Wells Fargo principally relies upon this Court's inapposite decision in *Murphy v. Empire of America, FSA*, 746 F.2d 931 (2d Cir. 1984) (applying New York state law). In *Murphy*, the Court held that a "transaction is consummated when the lender **and** borrower **sign a contract** obligating them, **respectively**, to **lend** and to **borrow** the funds." *Id.* at 934 (emphasis added). Plainly, as the Court's decision in **Murphy** makes clear, "consummation" depends upon **both**

---

[2] New York does require that a mortgage must be in writing. *See* New York General Obligations Law § 5-702(1).

3

*parties* being *mutually bound* to enforceable promises: the lender bound to the promise to lend, and the borrower bound to the promise to borrow. In fact, in *Murphy*, **both parties signed the commitment letter**, *id*. at 932, which thus became a binding and enforceable contract by *either* party.[3]

*Murphy* is easily distinguishable from this case on the basis of the mutuality of obligations which was the crux of the Court's decision. Whether Smith became obligated to *borrow* funds from Wells Fargo as soon as she signed the Wells Fargo Note and Wells Fargo Mortgage, as the District Court apparently believed (*see* A-115), Wells Fargo never signed either document and nothing in the record indicates that **Wells Fargo** signed *any* document that obligated it to *lend* funds to Smith before accepting Smith's signed documentation.[4]

In *Jackson v. Grant*, 890 F.2d 118 (9th Cir. 1989), the Ninth Circuit distinguished *Murphy* and declined to apply it on that same basis. In *Jackson*, as

---

[3] Because **both** parties signed the commitment letter in *Murphy*, it is immaterial that the case was decided under New York law rather than Connecticut law. The lender was obligated to lend and the borrower was obligated to borrow, thus satisfying Connecticut's unique statute of frauds requirement. However, the mutuality of obligations in *Murphy*, which is missing in this case, makes it inapplicable here. *See Bartomeli*, 783 A.2d at 1055.

[4] The District Court believed that Wells Fargo's original Mortgage Kit to Smith was an offer, which Smith accepted when she mailed the signed documents back to Wells Fargo. (A-115). That belief is mistaken. At most, Smith made an offer to borrow when she returned the signed Wells Fargo Documents to Wells Fargo. Wells Fargo reserved the right to review the signed documents before accepting them, which it apparently did some time prior to March 31, 2012. However, before Wells Fargo accepted her offer, Smith was not obligated to borrow from Wells Fargo since Wells Fargo had not mutually obligated itself to lend to Smith.

4

here, the lender "did not sign a commitment letter or any other contract obligating [them, respectively,] to lend funds." *Id.* at 121 (holding that *Murphy* was "not controlling and can be distinguished from the instant case").

Wells Fargo's assertion that Connecticut law is no different than New York law, *see* App. Br. at 14, is simply wrong. The Connecticut statute of frauds prevents a borrower from enforcing an agreement against a lender to loan more than fifty thousand dollars unless that agreement is in writing and signed by the lender. As was discussed above, there is no agreement or memorandum of an agreement in the record that is signed by Wells Fargo or an agent of Wells Fargo to fund the Wells Fargo Loan. Therefore, unlike the *Murphy* case, Smith ***could not have brought an action against Wells Fargo to fund the Wells Fargo Loan*** after she signed the Wells Fargo documents or returned the Wells Fargo documents by mail because Wells Fargo had not agreed in writing to fund the Wells Fargo Loan.

### D. The Loan Was Not Consummated When Smith Signed It

Wells Fargo also relies heavily on another inapposite case, *Bank of New York v. Conway*, 916 A.2d 130 (Conn. Super. Ct. 2006), to support its argument that the loan was "consummated" as soon as Smith signed the Wells Fargo Loan. It does not do so.

In *Conway*, the borrowers attended a closing – customarily referred to as a "round-table closing" – on March 22, 2000, at which time they signed the loan and

5

mortgage documents. *Id.* at 138. The lender, American Loan Centers, or its agent would have attended the round-table closing as well, and it (or its agent) would have signed the necessary closing documents, including the HUD-1 Uniform Settlement Statement required by 12 U.S.C. § 2603, to consummate the loan. At that point, the borrowers were obligated to borrow the money ***and*** the bank was obligated to lend it. Mutuality of the borrowers' and the lender's respective obligations was thus satisfied at that time, which is all the court decided in *Conway*. *Id*. at 139 (rejecting borrowers' argument that loan not consummated until quit claim deed was later signed).

The facts here – there was no round-table closing where Smith and Wells Fargo would have signed the necessary loan and closing documentation together – could not be more different. Quite simply, the borrower's and lender's mutuality of obligations required under Connecticut law[5] – and present in *Murphy* – did not exist here at any time before the loan was funded. In a typical face-to-face refinancing, the transaction is consummated at the round-table closing once all the documents, including the HUD-1, are signed by all the parties. The borrower's right to rescind begins to run at that time, not before then. The mere fact that this loan took place through the mail, where the borrower signed loan documents ***before*** the lender did so, rather than in a face-to-face closing when the parties sign

---

[5] *See Bartomeli*, 783 A.2d at 1055.

loan documents around the table at the same time, should not change that result. The loan was not consummated until both parties were bound to proceed, which did not happen before at least March 31, 2012. That is when Smith's three-day right to rescind began.[6]

Smith did not become contractually obligated on the Wells Fargo Loan until at least March 31, 2012, the "Settlement Date" that is identified on the HUD-1 Settlement Statement. (A-23). That is when, had this been a routine round-table closing, all the signed loan and closing documents (including the HUD-1) would have been exchanged. Therefore, as Smith alleged in the Complaint, her three-day right to rescind the Wells Fargo Loan expired no earlier than April 4, 2012. (A-13).

The NRCs that Wells Fargo sent to Smith did not provide the correct date when her rescission period expired. The NRCs erroneously stated that the "date of the transaction" was March 26, 2012, and that the Smith's rescission period expired on March 29, 2012. (A-21). Nothing in the record is consistent with the transaction having occurred on March 26, 2012. As explained above, under Connecticut law, the earliest possible date on which the Wells Fargo Loan was consummated was before Wells Fargo either signed the HUD-1 or funded the

---

[6] Although the District Court never determined when the loan was consummated, *see* A-116, the District Court's holding that both parties were obligated to perform when Smith signed the loan documents on March 13, 2012, *see* A-115, leads to the absurd conclusion her right to rescind ended on March 16, 2012, at which point Wells Fargo was not contractually obligated to do anything by virtue of the Connecticut statute of frauds.

7

Loan[7], because Wells Fargo had no enforceable obligation to fund the Wells Fargo Loan under the Connecticut statute of frauds prior to that date. Thus, Smith's right to rescind did not expire until at least April 4, 2012, six days *after* the date erroneously stated on the NRCs from Wells Fargo.[8]

Additionally, as Smith explained in her opening brief, the NRCs hardly provided Smith with "clear and conspicuous" notice of the date her rescission period began or expired. The TILA Disclosure Statement was dated **March 8, 2012** (A-23 to A-24), the HUD-1 identified the "Settlement Date" as **March 31, 2012** (A-26 to A-27),[9] and the Wells Fargo Loan documents are all dated **March 31, 2012** (A-43, A-47). Other than the requirement in the Lewis Letter that Smith return the signed loan documents to Wells Fargo by March 26, 2012, for the loan to proceed –the supposed beginning date of her rescission period – that date appears nowhere in any of the loan documentation.

---

[7] In a typical refinance transaction, the funds are held in escrow during the three-day rescission period in case the borrower exercises her right to rescind, after which they are released, assuming the borrower does not rescind.

[8] Even if the Court does not agree that the Wells Fargo Loan was consummated no earlier than March 31, 2012, the actual date of consummation cannot be determined on the record before the Court because it is unknown when Wells Fargo actually signed the HUD-1 or funded Smith's loan.

[9] Although Smith only included two pages of the HUD-1 as an exhibit to the SAC, the fourth page of the HUD-1 requires the signature of a representative of Wells Fargo. Thus, the Wells Fargo Loan could not have been consummated until Wells Fargo executed the HUD-1. However, because the District Court dismissed the SAC before Smith had the opportunity to conduct full discovery in the matter, Smith has no information as to when Wells Fargo actually signed the HUD-1.

# CONCLUSION

For all the reasons stated above, Plaintiff-Appellant Smith respectfully requests that the Court reverse the District Court's judgment granting Defendant-Appellee Wells Fargo's motion to dismiss and remand this action to the District Court to proceed on the merits.

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a 14-point proportionally spaced typeface using Microsoft Word 2016.

I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains exactly 2,158 words, excluding the parts of the brief exempted under Rule 32(a)(7)(B)(iii), according to the count of Microsoft Word 2016.

Dated: New York, New York
July 20, 2016

                **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

       By:   s/ Randall S. Newman
                 Randall S. Newman
                 270 Madison Avenue
                 New York, NY 10016
                 (212) 545-4600
                 newman@whafh.com

                 *Attorney for Plaintiff/Appellant,*
                 *Allyson Smith*